**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200021-U

Order filed February 17, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| FELIPE J. FRANCHINI, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-20-0021 |
| ANTHONY MARCHIO, ALLIANCE FENCE | ) | Circuit No. 18-AR-648 |
| CORPORATION and K.M.S. UNITED | ) | |
| CORPORATION, | ) | |
| | ) | Honorable Susan T. O'Leary, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Lytton and O'Brien concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding for defendant on plaintiff's claims of conversion and unjust enrichment.

¶ 2    Plaintiff, Felipe J. Franchini, filed a claim for conversion and unjust enrichment against defendant, Anthony Marchio, and his business interests relating to items left on a commercial property after the execution of a real estate contract. The trial court found in favor of Marchio. For the reasons that follow, we affirm.

¶ 3    I. BACKGROUND

¶ 4        In May 2013, Franchini sold a piece of commercial property to Marchio's business entity "K.M.S. United Corp." The property is a three-acre parcel consisting of a residential home, as well as a large garage and shed. Franchini stored structural steel and what the parties refer to throughout the proceedings as "cantilevers" on the property. The cantilevers are essentially shelving units or racks similar to those used in home improvement stores and lumber yards to store various equipment and supplies. For simplicity, we will refer to both the cantilevers and structural steel simply as steel. Franchini did not remove the steel prior to the sale of the property. The sales contract for the property contained a provision wherein Franchini would retain possession of the property for three months "rent free" after the sale to remove a large amount of personal property he had accumulated.

¶ 5        In July 2018, Franchini filed a two-count complaint claiming conversion and unjust enrichment. He alleged that after signing the contract to sell the property but before the closing, he and Marchio entered into an agreement where Marchio would purchase the steel for $12,000. Based on this, Franchini left the steel behind when he vacated the property. Thereafter, Marchio took the steel "with the intent to permanently deprive" Franchini of the same without paying him the $12,000.

¶ 6        Marchio answered the complaint, denying that he and Franchini ever discussed the sale of the steel for $12,000. He further denied that the alleged agreement served as the basis for Franchini leaving the materials behind or that he was intentionally, permanently denying Franchini of their use. Marchio then filed a motion to dismiss the unjust enrichment claim. 735 ILCS 2-619 (West 2018). Specifically, the motion to dismiss laid out that Franchini had alleged an express contract for the sale of the steel existed and unjust enrichment could only be pursued in the absence of an express contract.

¶ 7        Following the hearing on the motion to dismiss, Franchini filed an amended complaint. The amended complaint alleged that at the closing, Franchini and Marchio discussed allowing Franchini to keep the steel on the property until he could find a suitable storage space. This took an extended amount of time; in the interim, Marchio agreed to purchase the material for $12,000. In August 2014, Franchini sent a text message to Marchio requesting payment for the items. Marchio declined to make payment. The amended complaint also claims that other items with a cumulative value of $2500 were left at the property.

¶ 8        Marchio filed a counterclaim against Franchini based in *quantum meruit*. Marchio alleged that Franchini failed to remove numerous items from the property. He was then forced to store the items and "clean up" the property resulting in costs of $10,000.

¶ 9        The matter eventually proceeded to a bench trial. Both Franchini and Marchio testified.

¶ 10        Franchini testified as follows. He sold the property to Marchio's business K.M.S. United Corporation for $300,000 "as is." At the closing, he and Marchio entered into an oral agreement that Franchini would have until the end of the summer of 2014 to remove the steel. A few months after the closing, there was an oral agreement that Marchio would purchase the steel for $12,000. When Franchini texted Marchio for payment, Marchio refused to pay.

¶ 11        Counsel for Franchini submitted into evidence a collection of text messages between Franchini and Marchio from 2014. Franchini admitted that the messages submitted into evidence did not constitute the entirety of messages between he and Marchio. The messages depicted conversations between the parties about access to the property due to Marchio putting up fencing and Franchini's need to access the property to collect his belongings. On August 22, 2014, Franchini messaged Marchio stating, "When can I pick up the tub, you can have a little time to think about the rack, most of the material left was steel and useful, you never responded to my

messages to allow me access to that stuff, I had a place rented for." The message abruptly cuts off. The next message in the record bears no date but was presented at trial as if it were in succession to the above. Marchio stated, "It's cost me 12,000 dollars to clean all that up, the [V]illage of Rockdale was going to fine us. [P]lus the dumpster [was] another 2000 dollars." Franchini replied, "All you had to do was call me, or [message] me[,] I had a place, and trucks lined up to move my stuff." The final message from Marchio stated, "I did[,] you never replyed [*sic*]." Absent from the collection of messages are any communications that explicitly show Marchio agreed to buy the steel for $12,000. Franchini stated that in a message, Marchio agreed to buy the steel but admitted that message was one that was missing.

¶ 12 Franchini also stated that Marchio had locked him out of the property. However, under questioning by opposing counsel, Franchini also stated that all he had to do to get access to the property was to contact Marchio and he would let Franchini in.

¶ 13 Also submitted into evidence were satellite and ground level images of the property showing that the steel had been moved and erected into racks.

¶ 14 Marchio took the stand next, testifying as follows. After the closing, Franchini took the items that he wanted from the property and abandoned the rest. He never agreed to buy the steel for $12,000, although he was interested in it and had discussed buying it. Marchio told Franchini that he would not pay $12,000 for the steel because "it was not worth it." Marchio also told Franchini numerous times that he could pick up the steel whenever he wanted, including at a deposition prior to trial and again at trial. Marchio did admit to erecting the steel into racks on his property. He had to clean up the property because of his agreement with the Village of Rockdale to annex. Franchini never made a demand for the steel. Marchio never objected to Franchini obtaining access to remove items from the property and Marchio would come unlock the property

for Franchini. Marchio did not have contact with Franchini after August 2014 until the filing of this suit.

¶ 15    The trial court entered an order finding in favor of Marchio on Franchini's claims but denied the counterclaim. The court stated that after "[w]eighing all of the evidence presented at trial and the credibility of the witnesses, [Franchini] failed to meet his burden of proof that [Marchio] committed conversion or that they were unjustly enriched as alleged in Counts I and II of the Amended Complaint." Specifically, the court found that Franchini had failed to make a demand for the return of his property and that inaction was fatal to his conversion claim. The court also found that Franchini had failed to establish an agreement for the purchase of the steel, even though Franchini claimed a message he failed to produce evidenced the agreement. The court opined that,

> "No text message or document on any date was admitted that demonstrated
> that the parties entered into an agreement for the sale of steel, that a demand
> for payment was made[,] or that [Franchini] demanded [Marchio] allow him
> to remove the steel from the premises. *** If the text messages had been
> favorable to his case, he would have produced them."

¶ 16    Franchini appeals.

¶ 17                                II. ANALYSIS

¶ 18    Franchini argues the trial court misapplied the law by requiring that he prove that he made a demand for the steel before filing his conversion claim. He also argues the court erred in finding a contract for the sale of the steel did not exist.

¶ 19    Marchio asserts that the trial court properly found in his favor. He argues that it is well established that in order to succeed on a claim for conversion, one must plead and prove a demand

for the return of the property in question and a refusal by the defendant to do so. Marchio goes on to assert that Franchini's arguments regarding the existence of a contract for the sale of the steel are forfeit due to a failure to raise them below.

¶ 20                                   A. Conversion

¶ 21          In a civil case, a plaintiff must plead and prove the following elements to prevail on a conversion claim, (1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. See *In re Karavidas*, 2013 IL 115767, ¶ 61 (quoting *Loman v. Freeman*, 229 Ill. 2d 104, 127 (2008), quoting *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998)).

¶ 22          The great weight of jurisprudence in Illinois predicates the requirement of a demand as an element of conversion upon the possession of the property in question by the defendant. Put another way, where the defendant has sold or otherwise disposed of the property in question, thereby no longer having possession, a demand would be futile and ergo not required. See *Monroe County Water Cooperative. v. City of Waterloo*, 107 Ill. App. 3d 477, 481 (1982). "[T]he rationale being that a demand for possession would be fruitless where the defendant no longer possesses the chattel and the law will not require the doing of a useless act." *Id.* (citing *National Bond & Investment Co. v. Zakos*, 230 Ill. App. 608, 612 (1923)).

¶ 23          Here, Franchini claims that by fencing off the commercial property and "incorporating" the steel into the property, a demand for the return of the material would have been futile. We disagree. Marchio maintained possession over the property in question. Further, by erecting the steel into racks he did not incorporate the steel into the property in a way that would render the request for its return futile. Moreover, it is also apparent from the testimony that Marchio did not

deny Franchini access to the property to retrieve his belongings. Quite the opposite, Marchio at his deposition and at trial, stated Frnachini could retrieve the steel whenever he wanted.

¶ 24       Franchini was required to demand the return of his property before proceeding with a claim for conversion. None of the actions by Marchio constitute an independent act of conversion. Under the facts of this case, given the nature of the property in question, and its use by Marchio, we find a demand and refusal necessary.

¶ 25       Franchini cites to numerous cases for the proposition that he did not need to make a demand for the return of the steel after Marchio committed an independent act of conversion. See, *e.g.*, *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill. App. 3d 915 (1981); *Pavilion v. Kaferly*, 204 Ill. App. 3d 235 (1990). These cases are distinguishable, and none support the contention that by fencing off the property and erecting the steel into racks, Marchio committed an independent act of conversion.

¶ 26       In *Jensen*, the defendant sold the property in question. The appellate court found that the sale of the property by the defendant represented an independent act of conversion. *Jensen*, 94 Ill. App. 3d at 933. In addition, the court found it would have been futile to ask for the return of property the defendant did not have. *Id.*

¶ 27       In *Pavilion*, the court found that when the plaintiff asked to remove the property from the defendant's premises, this was sufficient to constitute a demand. *Pavilon*, 204 Ill. App. 3d at 248. Further, when the defendant later sold the property, this constituted an independent act of conversion. *Id.*

¶ 28       We could go on summarizing the cases cited by Franchini, but it suffices to say that they are inapplicable to the current matter, as Marchio is still in possession of the steel.

¶ 29　　Accordingly, the lower court did not err in finding that Franchini's failure to make a demand was fatal to his conversion claim.

¶ 30　　　　　　　　　　　　　B. Existence of a Contract

¶ 31　　Next, Franchini argues that various sections of the Illinois Uniform Commercial Code support his contention that the lower court erred in finding that a contract did not exist between the parties. See 810 ILCS 5/2-204, 2-202, 2-305 (West 2018). Franchini failed to raise these arguments in the trial court. Thus, they are forfeit. See *Hebert v. Cunningham*, 2018 IL App (1st) 172135, ¶ 37.

¶ 32　　With these arguments forfeited, Franchini provides no other basis to overturn the lower court's decision on this point. Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) has led to the oft-cited axiom that "[t]he appellate court is not a repository into which an appellant may foist the burden of argument and research." See, *e.g.*, *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37. " 'Points not argued are [forfeited]' and failure to properly develop an argument and support it with citation to relevant authority results in forfeiture of that argument." *Id.* (quoting Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)). We decline the opportunity to shoulder Franchini's burden of argument or search the record for a basis to overturn the trial court.

¶ 33　　Accordingly, Franchini has forfeited his challenge to the lower court's finding that a contract for the sale of the steel did not exist.

¶ 34　　　　　　　　　　　　　III. CONCLUSION

¶ 35　　For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 36　　Affirmed.